UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDRO BANEGAS and KRISTIE PREZIOSO, individually and on behalf of all other persons similarly situated who were employed by LUTHERAN AGUSTANA CENTER EXTENDED CARE AND REHABILITATION, INC. and/or any other entities affiliated with or controlled by LUTHERAN AGUSTANA CENTER EXTENDED CARE AND REHABILITATION, INC.,<br><br>Plaintiffs,<br><br>- against -<br><br>LUTHERAN AUGUSTANA CENTER EXTENDED CARE AND REHABILITATION, INC.,<br><br>Defendants. | Docket No. 12-CV-2390 (FB) (RLM) |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Joint Stipulation of Settlement and Release Agreement (the "Agreement") is entered into by and between Pedro Banegas and Kristie Prezioso (the "Named Plaintiffs") and Class Counsel (hereinafter defined) on behalf of themselves and all FLSA Claimants (hereinafter defined) and Class Members (hereinafter defined) and Lutheran Augustana Extended Care and Rehabilitation, Inc. ("Defendant" or "Augustana").

### 1. RECITALS AND BACKGROUND

WHEREAS, the Named Plaintiffs filed a Complaint against Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York State's Labor Laws claiming that Defendant failed to pay minimum and overtime wages;

WHEREAS, the Parties (hereinafter defined) stipulated to the certified collective pursuant to 29 U.S.C. § 216(b) with respect to all full or part-time hourly paid Registered Nurses and Licensed Practical Nurses who worked three or more shifts per week in any given week at Augustana at any point in time from September 19, 2009;

WHEREAS, the Stipulation for Collective Action Certification was So Ordered on September 28, 2012;

WHEREAS, the Parties have engaged in and completed extensive discovery during the course of the Litigation (hereinafter defined);

WHEREAS, Plaintiffs and Defendant have engaged in numerous and protracted settlement negotiations to arrive at the settlement described herein;

1

WHEREAS, the Parties participated in three mediation sessions of this matter, the first on March 15, 2013, the second on May 9, 2013, and the third on May 23, 2013, all of which were conducted by Ruth Raisfeld, Esq.;

WHEREAS, Defendant denies and continues to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims, between the Named Plaintiffs, the Class Members, the FLSA Claimants, and Defendant, including all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (hereinafter defined) analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Named Plaintiffs, the FLSA Claimants and the Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs, the FLSA Claimants and the Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   **Action or Litigation.** "Action" or "Litigation" shall mean the lawsuit titled *Banegas v. Lutheran Augustana Extended Care and Rehabilitation, Inc.*, No. 12-CV-2390 (FB) (RLM) (E.D.N.Y. filed May 14, 2012).

**1.2**   **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release Agreement.

**1.3**   **Claim Bar Date.** "Claim Bar Date" shall mean the last date for a Class Member to perform one of the following acts as further defined in this Agreement: (i) file a Claim Form; (ii) opt-out of the Litigation, or; (iii) file a timely objection to the proposed settlement, which date shall be no later than forty-five (45) days after the initial mailing of Notice of Proposed Settlement of Class Action Lawsuit. To the extent that a Notice is

returned without a forwarding address, the Claims Administrator will conduct a skip-trace to locate the Class Member, and re-mail the Notice within five (5) business days of receipt of the Notice without a forwarding address. A Class Member whose initial Notice is returned without a forwarding address shall have until the Claim Bar Date or fifteen days from the date of re-mailing to return the Claim Form, whichever is later.

**1.4**   **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached to the Notice of Proposed Settlement of Class Action Lawsuit, that the Class Members must sign and return post-marked by the Claim Bar Date in the form attached hereto as Exhibit B. The Claim Form must be timely filed with the Claims Administrator for a Class Member to be eligible to receive his/her distribution from the Settlement Fund Account.

**1.5**   **Claims Administrator.** "Claims Administrator" shall mean the entity selected to provide notice to the Class and, if agreed to by the Parties, distribute payment of the settlement to Class Members. The Claims Administrator is FRG Information Systems, Inc.

**1.6**   **Class or Class Member(s).** "Class" or "Class Members" shall be defined as all present and former persons employed as full-time, part-time or per diem Registered Nurses ("RNs") and Licensed Practical Nurses ("LPNs") by Augustana at any time between May 14, 2006 through October 9, 2012 excluding all administrative, executive, supervisory, office, and managerial positions and further excluding time, if any, when a Class Member worked in a position other than RN or LPN.

**1.7**   **Class Claimant.** "Class Claimant" shall mean a Class Member who files a Claim Form and Release, post-marked on or before the Claim Bar Date, electing to participate in the settlement of this Litigation. For Claim Forms submitted without a post-mark, such Claim Forms must be received by the Claims Administrator on or before the Claim Bar Date.

**1.8**   **Class Counsel or Plaintiffs' Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean Lloyd Ambinder and LaDonna Lusher of Virginia & Ambinder, LLP, Trinity Centre, 111 Broadway, Suite 1403, New York, New York, 10006.

**1.9**   **Class Member List.** "Class Member List" shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) job classification; (iv) dates of employment during the Relevant Time Period; and (v) social security numbers, if available, contained in a confidential document that the Defendant shall provide to the Claims Administrator and Class Counsel. The Class Member List is to be used to effectuate settlement, and may not be copied, disseminated or used for any other purpose. Class Counsel shall not use the list to initiate communication with any Class Member.

**1.10**   **Court.** "Court" shall mean the United States District Court for the Eastern District of New York, the Honorable Frederic Block, U.S.D.J. presiding.

**1.11**   **Covered Period.** "Covered Period" shall mean the period from May 14, 2006 through the date of the Implementing Order.

**1.12** **Days.** "Days" shall mean calendar days.

**1.13** **Defendant.** "Defendant" shall mean Lutheran Augustana Extended Care and Rehabilitation, Inc.

**1.14** **Defense Counsel.** "Defense Counsel" shall be Roger Briton and Noel Tripp of Jackson Lewis LLP, 58 S. Service Road, Suite 410, Melville, New York 11747.

**1.15** **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred:

  (A) the Court has entered Judgment and ruled on the motions for awards of service payments to the Named Plaintiffs pursuant to Section 3.1(E) and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

  (B)   the Judgment and the rulings on such motions have become Final. "Final" means the later of:

  (1)   31 days after the Court enters Judgment if no reconsideration or rehearing or appeal is sought;

  (2)   If rehearing or reconsideration is sought, after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

  (3)   If a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

**1.16** **Fairness Hearing.** "Fairness Hearing" shall mean the hearing before the Court relating to the Motion for Final Approval.

**1.17** **Fee Award.** "Fee Award" shall mean the court-approved attorneys' fees, costs and expenses as described in Section 3.2, as reduced proportionally pursuant to Paragraph 3.1.G.

**1.18** **Final Order.** "Final Order" shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the

settlement payments, service awards to the Named Plaintiffs, approval of professional fees and costs, and dismissal of this action.

**1.19    FLSA Claimants**. "FLSA Claimants" shall mean the Class Members who have already filed timely Consent to Join forms pursuant to 29 U.S.C. § 216(b). A list of the FLSA Claimants is attached hereto as Exhibit D. Maria Miranda shall not be considered an FLSA Claimant because she failed to appear for a noticed deposition, and failed to provide Plaintiffs' counsel with any sufficient reason for her failure to appear. FLSA Claimants do not have to file a Claim form to participate in this settlement.

**1.20    FLSA Claims.** "FLSA Claims" shall mean all wage and hour claims that could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of the FLSA Claimants. Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid minimum or overtime wages, and any other related wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

**1.21    Implementing Order.** "Implementing Order" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections. A proposed Implementing Order is attached hereto as Exhibit C.

**1.22    Named Plaintiffs.** "Named Plaintiffs" shall mean Pedro Banegas and Kristie Prezioso, or any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

**1.23    Notice.** "Notice" shall mean the Court–approved Notice of Proposed Settlement of Class Action attached hereto as Exhibit A, and including notice of an opportunity to opt-out and/or object to the proposed settlement.

**1.24    Parties**. "Parties" shall refer to the Named Plaintiffs, FLSA Claimants, the Class Members and Defendant collectively.

**1.26    Intentionally Left Blank.**

**1.27    Settlement Checks.** "Settlement Checks" shall mean the checks issued to Class Claimants from the Settlement Fund Account as calculated by Defense Counsel and Class Counsel in accordance with this Agreement.

**1.28    Settlement Fund Account.** "Settlement Fund Account" shall mean the FDIC insured account created and controlled by the Claims Administrator and/or the Parties.

**1.29    Settlement Fund.** "Settlement Fund" shall mean the maximum aggregate amount Defendant shall pay pursuant to this Agreement, which is the gross sum of Two Million Nine Hundred Thousand Dollars ($2,900,000.00). Under no circumstances shall the Settlement Fund exceed Two Million Nine Hundred Thousand Dollars ($2,900,000.00). Defendant shall fund the Settlement Fund under the terms of paragraph 2.12 below.

**1.30**    **State Law Claims.** "State Law Claims" shall mean all wage and hour claims that could have been asserted under New York State law by or on behalf of the Class, excluding Class Members who opt-out of the settlement but not including claims under the Fair Labor Standards Act. Released New York State Law Claims include, but are not limited to, all claims under state law for unpaid minimum or overtime wages, and any other related wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

## 2.    INITIAL PROCEDURAL ISSUES

**2.1**    **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2**    **State Law Settlement.** For purposes of settlement only, the Parties stipulate to include all Class Members possessing New York State Law claims during the Covered Period into this Agreement.

**2.3**    **Retention of the Claims Administrator.** To the extent necessary, the Parties shall engage a Claims Administrator who is mutually agreeable to the Parties.

**2.4**    **Responsibilities of the Claims Administrator.** The Administrator shall be responsible for:

A.    preparing, printing and disseminating the Notice and Claim Form to the Class;

B.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

C.    promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

D.    receiving, reviewing and stamping immediately upon receipt the Claim Forms submitted by the Class;

E.    keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

F.    ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and the mailing of Notice and Claim Form;

G.    responding to inquiries of the Class regarding procedures for filing objections, Opt-out Statements, and Claim Forms;

H.      referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Claims Administrator's duties specified herein. However, Class Counsel shall not initiate any communication with any Class Member other than the Named Plaintiffs and FLSA Claimants, except in response to an inquiry forwarded by the Claims Administrator pursuant to this Paragraph;

I.      responding to inquiries from Class Counsel and Defense Counsel consistent with the Claims Administrator's duties specified herein;

J.      promptly apprising Class Counsel and Defense Counsel of the activities of the Claims Administrator;

K.      maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with the Class;

L.      preparing and mailing all notices required pursuant to the Class Action Fairness Act; and,

M.      such other tasks the Parties mutually agree.

In addition, on a rolling basis throughout the claims period, and no later than fifteen (15) days prior to the Fairness Hearing, the Claims Administrator shall certify jointly to Class Counsel and to Defense Counsel (a) a list of all Class Members who timely filed their Claim Forms; (b) a list of all Class Members who filed timely objections; (c) a list of all Class Members who did not file a Claim Form; and, (d) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Claims Administrator shall also provide counsel for the Parties with an updated address list for the Class. Throughout the period of claims administration, the Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to the Class, and any other aspect of the claims administration process.

**2.5**     **Responsibilities of Defendant.** Unless some or all of the following are assigned to the Claims Administrator, Defendant shall be responsible for:

A.      calculating the amount of each Claimant's Settlement Check;

B.      mailing all required tax forms to Class Members as provided herein;

C.      setting up a Settlement Account to be used for the distribution of all Settlement Checks to Claimants, Class Counsel, and to Named Plaintiffs;

D.      calculating the employer-side payroll taxes required pursuant to the settlement;

E.      calculating and paying each Claimant's taxes and preparing appropriate tax forms for Defendant and for each Claimant;

F.   mailing the Settlement Checks to Class Counsel;

In addition, on a rolling basis throughout the claims period, and no later than ten (10) days prior to the Fairness Hearing, Defendant shall provide Class Counsel with the calculations it performed for each of the Class Claimants which shall include each Class Claimant's (i) name; (ii) job classification(s); (iii) dates of employment during the Covered Period; (iv) full, part-time or per diem status; (v) hourly rate of pay; and (vi) claim amount.

**2.6   Notice.** The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out of, or to file a Claim Form to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Implementing Order by the court, the Claims Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notice of Proposed Class Action Settlement and Claim Form. The Claims Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice and Claim Form is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Claims Administrator will notify Class Counsel and Defense Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.7   Approval of the Implementing Order.**

(A)   Plaintiffs' Counsel shall apply to the Court for approval of the proposed Notice and Claim Form. The proposed Notice, Claim Form and Implementing Order approved by the Parties is annexed hereto and made a part of this agreement as Exhibits "A", "B" and "C" respectively.

(B)   The proposed Implementing Order will seek the setting of a deadline of forty-five (45) days from the initial mailing of Notice and Claim Form to the Class: (a) for Class Members to submit Claim Forms, (b) to file Opt-out Statements, and/or (c) to object to the settlement. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing for Final Approval of the Settlement which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Implementing Order.

(C)   Class Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed Notice to the Class; (3) incorporate the terms of the Release, as described herein; (4) dismiss the Litigation; and (5) award Class Counsel's fees, expenses and costs.

(D) The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with prejudice shall be submitted to this Court.

## 2.8 Notice and Claims Forms to Class

(A) Within fifteen (15) days of the Court's entry of the Implementing Order, Defense Counsel will provide Class Counsel and the Claims Administrator, in electronic form and for all Class Members, the Class Member List. The Class Member List shall be utilized for the sole purpose of mailing the Notice and administering the settlement hereunder. All information provided regarding the Class will be treated as confidential information by Class Counsel and the Claims Administrator. Said information will not be used by Class Counsel for any purpose other than to effectuate the terms of settlement.

(B) Class Members will have forty-five (45) days from the date of initial mailing to return the Claim Form and become a Claimant. To be effective, a Claim Form must be post-marked by the Court-authorized Claim Bar Date or, for Claim Forms without a postmark, must be received by the Claims Administrator on or by the court-authorized Bar Date. To the extent that the envelope does not contain a post-mark, the date that the Claims Administrator stamps the envelope or Claim Form 'received' shall apply.

(C) To the extent that a Notice is returned without a forwarding address, the Claims Administrator will conduct a skip-trace to locate the Class Member, and re-mail the Notice providing an additional 15 days to file a Claim Form via first class mail, which date shall be post-marked no later than fifteen (15) days after the original Claim Bar Date.

## 2.89 Opt-outs.

(A) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Claim Bar Date.

(B) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Augustana wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Claims Administrator or Class Counsel by the Bar Date.

(C) The Administrator will send a final list of all Opt-out Statements to Class Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes

accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any State Law Claims released and dismissed. Only those Class Members who timely complete and return a Claim Form post-marked or otherwise received by the Bar Date will be deemed authorized to participate in this settlement as a "Class Claimant."

(E) For purposes of this agreement, the Named Plaintiffs and FLSA Claimants are deemed to be Claimants, and are not required to file a Claim Form to participate in the settlement, unless they opt-out in accordance with the terms of this agreement.

**2.10 Objections to Settlement.**

(A) Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be effective, such statement must be mailed to the Claims Administrator via First-Class United States Mail post-marked or otherwise received by the Claim Bar Date. The Administrator will stamp the date received on the original and send copies of each objection and supporting documents, to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection.

(B) An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

(C) The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.11 Fairness Hearing and Motion for Final Approval and Dismissal.**

At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Joint Stipulation of Settlement and Release Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order Defendant to distribute the Settlement Checks to the Class Members who filed valid, timely Claim Forms pursuant to the funding and payment schedule set forth in Paragraph 2.12; (3) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the Settlement Account pursuant to the funding and payment schedule set forth in Paragraph 2.12; (4) (a) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (b) order the dismissal with

prejudice of FLSA Claims and State Law Claims by all Class Claimants; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.12   Funding of Settlement and Mailing of Settlement Checks.**  Defendant shall make a lump sum payment funding the first one–third (1/3)  installment of the total sum owed under this Agreement   within thirty (30) days after the Final Effective Date, but in no event earlier than February 1, 2014.   From this amount the Defendant or the Claims Administrator shall distribute one-third of each Class Claimant's share under this Settlement as well as one-third of the Fee Award, within seven (7) days thereafter.   The second one-third (1/3) installment of the settlement payment from the Settlement Fund shall be funded no later than August 1, 2014 and distributed in the same manner. The third and final one-third (1/3) installment of the settlement payment from the Settlement Fund shall be funded no later than December 15, 2014 and distributed in the same manner.

**2.13   Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

**3.   SETTLEMENT TERMS**

**3.1   Settlement Fund Computation and Allocations.**  Individual Claimants share of the Settlement Fund shall be computed as follows:

(A)   Class Claimants who are FLSA Claimants.   For the period May 14, 2006 until May 1, 2009, FLSA Claimants shall be computed for every shift they worked: (i) .25 hours at their regular hourly rate; and (ii) .75 hours at their overtime hourly rate.   For the period from May 1, 2009 through October 9, 2012 FLSA Claimants shall be computed (i) .5 hours at their regular hourly rate; and (ii) .75 hours at their overtime hourly rate.   FLSA Claimants shall be entitled to additional damages not to exceed an amount equal to their computed share for work performed from the date three years prior to an FLSA Claimant's opt in date based on the filing of his or her Consent form through October 9, 2012 ("FLSA Period").   FLSA Claimants shall be entitled to additional damages not to exceed an amount equal to twenty-five percent (25%) of their calculated share for work prior to their respective FLSA Period but since May 14, 2006. Named Plaintiffs shall be entitled to additional damages not to exceed an amount equal to their computed for work performed from May 1, 2009 through October 9, 2012.   Named Plaintiffs shall be entitled to additional damages not to exceed an amount equal to twenty-five percent (25%) of their calculated share for work performed prior to May 1, 2009 but since May 14, 2006.

11

(B)     Class Claimants who worked full-time.  For the period May 14, 2006 until May 1, 2009, Class Claimants employed as full-time RNs or LPNs shall be computed 1.00 hour at their regular hourly rate times 3.74 shifts per week for every week they worked full-time.  For the period May 1, 2009 through October 9, 2012, Class Claimants employed as full-time RNs or LPNs shall be computed 1.25 hour at their regular hourly rate times 3.74 shifts per week for every week they worked full-time.  Class Claimants shall be entitled to additional damages not to exceed an amount equal to twenty-five percent (25%) of their calculated share.

(C)     Class Claimants who worked part-time.  For the period May 14, 2006 until May 1, 2009, Class Claimants employed as part-time RNs or LPNs shall be computed 1.00 hour at their regular hourly rate times 3.00 shifts per week for every week they worked part-time.  For the period May 1, 2009 through October 9, 2012, Class Claimants employed as part-time RNs or LPNs shall be computed 1.25 hour at their regular hourly rate times 3.00 shifts per week for every week they worked part-time.  Class Claimants shall be entitled to additional damages not to exceed an amount equal to twenty-five percent (25%) of their calculated share.

(D)     Class Claimants who worked per diem.  For the period May 14, 2006 until May 1, 2009, Class Claimants who worked per diem shall be computed .5 hours at their regular hourly rate times 2.25 shifts per week for every week they worked per diem.  For the period May 1, 2009 through October 9, 2012, Class Claimants who worked per diem shall be computed .75 hours at their regular hourly rate times 2.25 shifts per week for every week they worked per diem.  Class Claimants who worked per diem shall be entitled to additional damages not to exceed an amount equal to twenty-five percent (25%) of their computed share.

(E)     Service Awards for Named Plaintiffs.  Class Counsel shall seek Court Approval of the payment of a Service Award of Five Thousand Dollars ($5,000.00) each to the Named Plaintiffs in consideration for work performed on behalf of the Class. Defendant shall not comment on this application. The substance of Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(F)     Class Claimant Share Calculation.  (1) All Class Claimants' regular rates used shall be the last hourly rate they were paid by Defendant as of October 9, 2012 discounted by 7.5% except Class Claimants who promoted from LPN to RN between May 14, 2006 and October 9, 2012 shall have their potential award calculated as 7.5% of their last rate in title. (2) The resulting computed gross share for each Class Claimant shall be reduced by 10% for professional fees, costs and

expenses. (3) The computed share for each Class Claimant may be further reduced pursuant to Section 3.1.G below.

(G)     Maximum Payment. The Parties expressly acknowledge that Defendant shall not be required to pay more than the Settlement Fund of Two Million Nine Hundred Thousand Dollars ($2,900,000.00) to the Class Claimants, Class Counsel, the Named Plaintiffs or to anyone else regardless of the aggregate amount of Claims that are filed. To the extent that the aggregate value of all claims submitted by Class Claimants, the Fee Award and Service Awards to the Named Plaintiffs exceeds $2,900,000.00, then the individual computed shares to be paid to Class Claimants and Class Counsel and Named Plaintiffs shall be reduced to $2,900,000.00. To the extent the total aggregate value of all claims submitted by Class Claimants, the Fee Award and Service Awards to the Named Plaintiffs is less than $2,900,000.00 such sum shall remain with Defendant.

(H)     The receipt of any Settlement Payment will not entitle any Class Claimant to additional compensation or benefits under any of Defendant's bonus, profit-sharing, or other compensation or benefit plans or agreements in place at the time of such payment or in effect at any time during the Covered Period, nor will it entitle any Class Claimant to any increased retirement, 401K benefits, matching benefits or deferred compensation benefits. The payments provided for hereunder are the sole payments to be made by Defendant to the Class Claimants, and that the Class Claimants are not entitled to any new, further or additional compensation or benefits as a result of having received the payments hereunder (notwithstanding any contrary language or agreement in any benefit or compensation plan document that may now or might have been in effect during the Covered Period).

3.2     **Professional Fees, Costs and Expenses.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses not to exceed thirty percent (30%) of the Settlement Fund, which includes reimbursement of their actual litigation expenses and costs. These fees shall come out of the Settlement Fund, within the limits provided for herein. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

3.3     **Tax Characterization.**

(A)     Except as set forth below, settlement payments to the Class will be allocated as follows: (i) fifty percent (50%) of the payments to Class Claimants hereunder (other than the Service Awards) will be deemed back-wage payments and/or wage income ("Wage Payments"), and (ii) the balance of payments to Class Claimants (other than Service Awards) will be deemed liquidated damages which, together with the Service Awards are non-wage payments and are subject to 1099 reporting ("Non-Wage Payments").

(B)     All Wage Payments shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and

the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All Non-Wage Payments shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Claimant and FLSA Claimant. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings. Forms 1099 for this payment shall be issued as required by prevailing tax law.

(C)     Defendant shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments, which shall not be paid from the Settlement Fund. Defendant shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments. Withheld tax payments on Wage Payments shall be paid from the Settlement Fund.

3.4     **Hold Harmless.** With respect to payments received pursuant to this Agreement that are not characterized as Wage Payments, the Named Plaintiffs and all Class Claimants assume full responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendant are liable for any failure by any Named Plaintiff, Class Claimant, Class Counsel and/or Defendant to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement other than a Wage Payment, Named Plaintiffs, Class Claimants, and Class Counsel agree to hold Defendant harmless, and indemnify Defendant from any payments the Defendant may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any Named Plaintiff's, Class Claimant's and/or Class Counsel's failure to pay any taxes that any such individual or entity owes related to said income.

3.5     **Default.** In the event any payment under this section is not made when due, Class Counsel or their authorized agent shall deliver a notice of such default addressed to Roger Briton and Noel Tripp of Jackson Lewis LLP, 58 S. Service Road, Suite 410, Melville, New York 11747 via Federal Express and facsimile (631 247 0417). Such default may be cured by making payment of the installment or installments then due to the Claims Administrator or directly to Class Counsel within fifteen (15) business days of receipt of the notice of default. Should Defendant fail to cure the default, Class Counsel shall apply to the Court to enforce the Settlement Agreement.

4.    **RELEASE**

4.1    **Release of Claims.**

    (A)    Upon the Order Granting Final Approval, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendant, Defendant's present and former parent companies or entities, subsidiaries, related or affiliated companies or entities, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, overtime pay, minimum or straight time wages, failure to maintain and furnish employees with proper wage records, spread-of-hours, claims, meal break claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the New York Labor Law and New York Code of Rules and Regulations), through the Effective Date of this Agreement. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs. In addition, each Class Claimant specifically and affirmatively releases Releasees from any claims for unpaid minimum wages, overtime wages, liquidated damages, and attorneys' fees and costs related to such FLSA Claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of this Agreement.

    (B)    Each Class Claimant or FLSA Claimant forever and fully releases Defendants from all New York State Law Claims.

    (C)    By operation of the entry of the Judgment and Final Order, and except as to such rights or claims as may be created by this Agreement, each Class Member forever and fully releases Releasees from all released claims as detailed in paragraph 4.1(A) above.

    (D)    **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(E) **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(F) Except as provided in this Agreement, upon payment of the Fee Award approved by the Court, as may be reduced by virtue of paragraph 3.1.G above, Class Counsel, the Named Plaintiffs, Claimants, and Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Releasees for attorneys' fees, expenses and costs associated with Class Counsel's representation of the Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

(G) Notwithstanding any provision to the contrary, any Class Member who does not become a Claimant as defined in paragraphs 1.7 and 1.26, or opt-outs of this Action, shall not be deemed to have relinquished any rights he or she may possess under the Fair Labor Standards Act.

(H) As a condition to receiving payment hereunder, each of the FLSA Claimants must provide Defendant's Counsel with a duly executed release identical in form to the release set forth in paragraph 4.1 (I) below substituting "[NAME] FOR HER/HIMSELF, AND HER/HIS RESPECTIVE SPOUSE...."

(I) NAMED PLAINTIFFS FOR THEMSELVES, AND THEIR RESPECTIVE SPOUSES AND FAMILY, ATTORNEYS, AGENTS, EXECUTORS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS, ANY FUTURE ESTATES, ASSIGNS AND BENEFICIARIES AND ANY AND ALL OF THEM, VOLUNTARILY

AND WITH THE ADVICE OF COUNSEL, FULLY AND FOREVER RELEASE, ACQUIT, AND DISCHARGE RELEASEES IN THEIR PERSONAL, INDIVIDUAL, OFFICIAL AND/OR CORPORATE CAPACITIES FROM ANY AND ALL CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; SECTIONS 1981 THROUGH 1988 OF TITLE 42 OF THE UNITED STATES CODE; THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA") (EXCEPT FOR ANY VESTED BENEFITS UNDER ANY TAX QUALIFIED BENEFIT PLAN); THE IMMIGRATION REFORM AND CONTROL ACT; THE AMERICANS WITH DISABILITIES ACT OF 1990; THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA"); THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT; THE FAIR CREDIT REPORTING ACT; THE NEW YORK EXECUTIVE LAW (INCLUDING ITS HUMAN RIGHTS LAW); THE NEW YORK STATE LABOR LAW (INCLUDING ITS WHISTLEBLOWER PROVISIONS),AND OTHER LAWS, REGULATIONS AND ADMINISTRATIVE CODES OF THE STATE OF NEW YORK AND THE CITY OF NEW YORK (INCLUDING THE CITY OF NEW YORK'S HUMAN RIGHTS LAW); ANY OTHER FEDERAL, STATE OR LOCAL LAW, RULE, REGULATION, OR ORDINANCE; ANY PUBLIC POLICY, CONTRACT, TORT, OR COMMON LAW; OR ANY BASIS FOR RECOVERING COSTS, FEES, OR OTHER EXPENSES INCLUDING ATTORNEYS' FEES INCURRED IN THESE MATTERS.

I FURTHER AGREE THAT (OTHER THAN TO MY IMMEDIATE FAMILY, TAX ADVISOR OR LEGAL COUNSEL) I SHALL NOT DISCLOSE OR IN ANY WAY PUBLICIZE THE SETTLEMENT PAYMENT MADE TO ME HEREUNDER, WHETHER ORALLY, IN WRITING, ELECTRONICALLY, IN SOCIAL MEDIA OR OTHERWISE. I UNDERSTAND AND AGREE THAT VIOLATION OF THIS PROMISE OF CONFIDENTIALITY MAY BE A SUFFICIENT BASIS FOR AN AWARD OF INJUNCTIVE RELIEF  OR DAMAGES FOR INJURIES CAUSED BY MY BREACH OF THIS CONFIDENTIALITY PROMISE.

**5.    INTERPRETATION AND ENFORCEMENT**

**5.1    Cooperation Between the Parties; Further Acts**.   The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3**   **No Publicity.**  Named Plaintiffs and Class Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, LinkedIn and Twitter, (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same.  If contacted by any member of the Media or any other individuals through any of the Media, Named Plaintiffs and/or Class Counsel will simply state that the Litigation has been resolved and will provide no other comment whatsoever.  Class Counsel agrees to not use the existence of or any aspect of the Litigation as a marketing tool or for promotional purposes in any manner, except that Class Counsel may reference the settlement recovery so long as Defendant and/or the Litigation are not identified by name or more specifically than as a nursing facility in Brooklyn.  In addition, as a condition of payment, the Claim Form shall include a confidentiality commitment.  Notwithstanding the terms of this paragraph, Defendant shall be free to make whatever disclosures it deems appropriate with respect to this litigation provided those disclosures are truthful, and no derogatory statements are made about Class Counsel and/or the Named Plaintiffs.

**5.4**   **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Class, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5**   **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6**   **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7**   **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8**   **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9**   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10** **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

**5.11** **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Binding Authority of Plaintiffs' Counsel.** Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**5.14** **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.15** **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

Dated: November 4, 2013

By: _____

Lloyd R. Ambinder
LaDonna Lusher
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, New York 10006
Tel: (212) 943-9080

*Attorneys for Plaintiffs*

Dated:  November 4, 2013

Lutheran Augustana Extended Care and Rehabilitation, Inc.

_____

By:

Dated: November 4, 2013

By: _____
Lloyd R. Ambinder
LaDonna Lusher
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, New York 10006
Tel: (212) 943-9080

*Attorneys for Plaintiffs*

Dated:  November 4, 2013

Lutheran Augustana Extended Care and Rehabilitation, Inc.

By: _____

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME, INCLUDING MY RELEASE OF CLAIMS.**

DATED: November 4, 2013          By: _____
                                       KRISTIE PREZIOSO

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 4th day of November in the year 2013 before me, the undersigned, personally appeared Kristie Prezioso, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument

_____
Signature and Office of individual
taking acknowledgment

Lusher, Ladonna
Notary Public State of New York
No. 02LU6202379
Qualified in Kings County
Commission Expires 3/16/2017

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME, INCLUDING MY RELEASE OF CLAIMS.**

DATED: November 4, 2013          By: _____
                                       PEDRO BANEGAS

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the 4th day of November in the year 2013 before me, the undersigned, personally appeared Pedro Banegas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument

_____
Signature and Office of individual
taking acknowledgment

Lusher, Ladonna
Notary Public State of New York
No. 02LU6202379
Qualified in Kings County
Commission Expires 3/16/2017

4851-3245-1862, v. 2

21